**STATE of Tennessee, Appellee,**

v.

**Kenneth M. SEATON, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 12, 1995.

Charles I. Poole, Sevierville, for Appellant.

Charles W. Burson, Attorney General of Tennessee, and Christina S. Shevalier, Assistant Attorney General of Tennessee, Nashville, Alfred C. Schumtzer, Jr., District Attorney General, and G. Scott Green, Assistant District Attorney General, Sevierville, for Appellee.

## OPINION

TIPTON, Judge.

The defendant, Kenneth M. Seaton, Jr., was convicted by a jury in the Sevier County Circuit Court of driving while under the influence of an intoxicant (DUI) and received a sentence of eleven months, twenty-nine days in jail, of which all but forty-eight hours was suspended, and a fine of two hundred, fifty dollars. Both the defendant and the state have appealed as of right. The defendant contends that the trial court erred in holding that the police were justified in stopping the defendant's car, while the state contends that the trial court "abused its discretion by sentencing the defendant to the minimum sentence for a first conviction for DUI."

The defendant does not contest the fact that taken in the light most favorable to the state, the evidence was sufficient to convict him of DUI. Rather, he asserts that the information possessed by the officer who stopped his car and ultimately arrested him was insufficient to render the stop constitutionally sound. If the stop was improper, then the evidence derived from it, such as the defendant's appearance and failure to pass field sobriety tests, should have been excluded from the evidence.

On February 17, 1994, Pigeon Forge Police Detective Tim Trentham was restoring a truck in the back yard of his home when he heard and saw the defendant and another person, later identified as Gary Reed, "whooping and hollering and carrying on" in a yard that was about two hundred, ten feet from Trentham. Trentham testified that he saw Reed urinate in the yard even though children were playing nearby and it was the middle of the day. He said that he knew the defendant's past reputation, but he did not specify what he knew. He said that based upon all of the above, he believed that the defendant was intoxicated and he radioed for someone to investigate, essentially relating what he observed and believed. Then, Trentham saw that the defendant and Reed were leaving in the defendant's car and he radioed that fact as it happened. Also, he

radioed that the defendant almost hit a tree in trying to back out of the driveway and that he believed that the defendant was under the influence.

Based upon the early transmissions, Pigeon Forge Police Officer Scott Finney went to the area. He heard Trentham's reported observations of the defendant leaving in his car and then saw the defendant's car pass by him. Finney testified that the defendant was on a narrow, winding road and that he did not follow the defendant for long before he stopped him. He stated that he observed the defendant commit no violations, but he stopped him because of Trentham's reports about the urinating and being under the influence.

The trial court denied the defendant's motion to suppress without giving any reason or disclosing any findings. The defendant contends that without personally observing suspicious or criminal behavior by him, Officer Finney did not have sufficient specific and articulable facts from Trentham's reports to justify an investigatory stop of the defendant. He relies upon cases that variously provide that a driver cannot be stopped and immediately arrested solely upon a report that he had previously driven recklessly, *see St. John v. State*, 491 S.W.2d 629 (Tenn.Crim.App. 1972), and that a report from an anonymous informer of drunk driving did not justify a stop by an officer who saw no corroborating suspicious activity. *See State v. Brothers*, 828 S.W.2d 414 (Tenn.Crim.App.1991).

▅▅▅▅ Unfortunately, the record establishes that a motion for new trial was not filed in this case. Pursuant to Rule 3(e), T.R.A.P., in a case tried by a jury, we are required to treat as waived any issue relating to the admission or exclusion of evidence that was not submitted in a motion for new trial, unless it is dispositive of the case. *See, e.g., State v. Keel*, 882 S.W.2d 410 (Tenn.Crim. App.1994). The defendant admits that no motion was filed, but he contends that the successful pursuit of the issue leads to a dismissal of the case. The state does not concede this potential result, though, and we note that other evidence, such as Mr. Reed's testimony, could reasonably exist even without the evidence gained from the defendant

in the stop. Therefore, absent the existence of plain error, the issue of the propriety of the stop is not properly before us in strict compliance with the appellate rules.

However, the record reflects that the defendant raised this claim before the trial, at the end of the proof, and at the sentencing hearing in such a fashion that we are confident that the trial court remained firm in its stance throughout. In this respect, the purpose of requiring a new trial motion is fully met in this case. Therefore, in the interest of justice, we opt to consider the merits of the issue raised by the defendant.

▅▅▅▅ Generally, we note that the police are entitled to stop a car for investigative purposes if they have reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. *See State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992). When the supporting information comes from another officer involved in the same investigation, we, and his fellow officers, may presume that he is credible. *See State v. Moon*, 841 S.W.2d 336, 338, n. 1 (Tenn.Crim.App.1992). Also, one officer, ignorant of the details, may stop a car for investigative purposes upon the request of an officer who does have sufficient knowledge to justify such a stop. *See United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). The question of reasonable suspicion is answered by considering the totality of the circumstances, including looking at the gravity of the public concern at stake, the degree that police intrusion advances that concern and the severity of the intrusion. *See Watkins*, 827 S.W.2d at 294; *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn.1993).

▅▅▅▅ In the present case, the antics of the two men in the yard in a normally quiet neighborhood, including one urinating in public, and the problems in backing out of the driveway, when coupled with the police knowledge of the defendant's past history, gave sufficient rise to a belief that the defendant was under the influence so as to allow for further investigation. Also, the danger presented by, and to, an intoxicated driver on a narrow, winding road adds justification for

the stop occurring when it did. The investigatory stop was justified.

As for sentencing, the state contends that the defendant deserves more than the minimum sentence imposed by the trial court. Initially, we point out that the trial court did not impose the minimum sentence. Actually, the eleven-month, twenty-nine day sentence imposed is the maximum term provided by law for a first offense DUI. What the state is actually contesting is the fact that only the minimum term of *confinement* was ordered, while the remainder of the sentence was suspended.

Also, we note that although a sentence in a DUI case must meet certain mandatory restrictions provided in the DUI statutes, the sentence must otherwise comply, as well, with the misdemeanor sentencing requirements of the Criminal Sentencing Reform Act of 1989. *See State v. Palmer,* 902 S.W.2d 391 (Tenn.1995). In this regard, one of the limited circumstances in which the state is allowed to appeal the imposition of a sentence is the trial court's granting probation for part of the sentence. *See* T.C.A. § 40–35–402(b)(2). Pursuant to subsection (d) of that statute, the standard of appellate review for any sentencing determination is *de novo* with a presumption that the trial court's determinations are correct. However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). In other words, absent the affirmative showing in the record, the presumption of correctness falls.

At the sentencing hearing, the state called two police officers as witnesses about 1988 and 1990 DUI charges that led to reckless driving convictions of the defendant. Pigeon Forge Police Corporal Rodney Carr testified that early in the morning on February 13, 1988, he arrested the defendant for going fifty-five miles per hour in a thirty-five miles per hour zone. He said the defendant's eyes were glassy and that he slid as he stood. He stated that the defendant was given field sobriety tests, after which he formed the opinion that the defendant was under the influence of alcohol. Over defense objection for insufficient foundation, he testified that the defendant took a breath alcohol test that registered .11 percent. He acknowledged that the charge was "reduced" to reckless driving.

Gatlinburg Police Officer Chris Brown testified that around 1:30 a.m. on March 24, 1990, he stopped a car that had spun its tires. He said the driver was the defendant and that the defendant did not perform the field sobriety tests as he had instructed. Over objection, Officer Brown testified that the defendant's breath alcohol test registered .24 percent, although he admitted that he did not administer the test. He stated that he believed the defendant to be intoxicated.

The defendant presented no evidence at the hearing, but argued that the offense was not aggravated and should lead to the minimum confinement. He noted that the jury recommended the minimum fine provided by law. Also, he argued that he had already served his reckless driving sentences and that he should be treated no differently than any other first offense DUI. In response, the state argued that the uncontradicted evidence of the defendant previously driving under the influence should be considered and that the previous imposition of reckless driving convictions represented the defendant previously receiving "breaks." It noted that a person convicted after a trial or pleading guilty to DUI is required to serve forty-eight hours in confinement even if no previous blemish exists on his or her record.

The trial court acknowledged the officers' testimony at the sentencing hearing, but also noted that the present case had been dismissed in Trial Justice Court because of the stop issue. It stated the following before imposing the sentence involving minimum confinement:

> And I will admit it is a close question with reference to whether or not the—there was probable cause, proper probable cause, to stop the vehicle. And technically you have two reckless driving convictions, you don't have two DUI convictions. And given all of those circumstances I'm not sure that the presumptive wouldn't apply.

I don't think you should be penalized for having a jury trial because you have a close question.

In other words, the record reflects that the trial court imposed the sentence because of the potential merit of the stop issue, its belief that application of the minimum sentence was "presumptive," its conclusion that, "technically," only past reckless driving convictions were shown, and its concern that the defendant should not be penalized for having a jury trial because of the close stop question.

■ The state contends that the record in this case cannot justify a minimum time of confinement. It refers us to a case in which this court affirmed a five-day sentence of confinement for a first offense DUI, although the controlling decision in that case was that the sentencing issue was waived through a procedural default. *See State v. Karl C. Davis,* No. 01C01–9009–CC–00219, Williamson Co., slip op. at 3–4, 1991 WL 8518 (Tenn. Crim.App. Jan. 31, 1991), *app. denied* (Tenn. May 13, 1991). However, we agree that the record fails to show that the trial court properly considered the principles and purposes of sentencing under the relevant facts and circumstances.

■ First, we note that the presumption that the minimum sentence should be imposed is provided in the statutory provision dealing with sentencing within *felony* ranges. *See* T.C.A. § 40–35–210. This court has consistently held that there is no presumptive minimum sentence provided by law for misdemeanors. *See, e.g., State v. Creasy,* 885 S.W.2d 829, 832 (Tenn.Crim.App.), *app. denied* (Tenn.1994). Thus, the trial court's apparent reliance upon a presumptive minimum time of confinement was misplaced.

Second, the extent to which the trial court may consider the fact that the issue of the stop was a close question is problematic. It does not even relate to the factual issue of whether the defendant was driving in public while he was intoxicated. That is, it is easy to understand that a close question on the issue of factual guilt might translate into a conclusion that some form of reduced culpability should be considered in sentencing. However, the question of the police conduct, once determined to be proper, has little to do with assessing the appropriate misdemeanor sentence that is to be consistent with the purposes and principles of the 1989 Sentencing Act. *See* T.C.A. § 40–35–302(b).

Third, to impose the minimum confinement in order that the defendant not be penalized for going to trial on a close question has a laudable goal, but it is entirely misplaced in this case. To say that the defendant would be penalized for going to trial necessarily presumes that the defendant would get the minimum sentence if he did not go to trial. The record does not suggest in any fashion that such would have been the case. Moreover, the fact that the defendant rightfully asserted his right to a jury trial should not be used to insulate him from legitimate reliance upon the purposes and principles of the 1989 Act in fashioning a proper sentence. In other words, the state should not be penalized either by the defendant's asserting his right to trial.

Finally, in limiting its comments to the "technical" fact that the defendant's previous convictions were only for reckless driving, the trial court unduly failed to consider the extent of the history of criminal behavior presented at the sentencing hearing by the state. Although we do not consider the blood alcohol test results in the previous cases because no foundation was laid to establish their reliability, we cannot ignore the uncontradicted testimony of the two officers about their personal observations of and opinions about the defendant's condition and conduct that led to his previous arrests and convictions. In this respect, we note that the record indicates that the trial court did not question the truthfulness of the officers' testimony.

Under these circumstances, we conclude that the presumption of correctness for the sentence imposed must fall, and that given the completeness of the record before us, it is our responsibility to impose an appropriate sentence. In determining a sentence that complies with both the DUI laws and the purposes and principles of the 1989 Sentencing Act, we are guided by the need to impose a sentence that fits both the offense as com-

mitted and the offender and that is the least severe measure necessary and deserved under the Act. *See* T.C.A. §§ 40–35–102 and –103. Upon the record before us, the major concern is the proven pattern of mixing alcohol and driving, a potentially deadly combination. The defendant has presented no claim of mitigation, except that the offense was not committed in an aggravated manner. However, consideration of the offense as committed is only one aspect of the sentencing decision. In this case, to require only the minimum time to be served in confinement does not sufficiently address the seriousness of the defendant's conduct in relation to his history of similar criminal behavior. Therefore, we conclude that the sentence imposed by the trial court should be modified to require five days of confinement in the county jail.

In consideration of the foregoing, the conviction is affirmed. The sentence imposed by the trial court is affirmed except that it is modified to reflect that the defendant's term of confinement in the county jail shall be five days.

SCOTT, P.J., and DANIEL, Special Judge, concur.