IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION



FILED

**July 8, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9601-CC-00007 |
| Appellee, | * | WASHINGTON COUNTY |
| VS. | * | Honorable Arden L. Hill, Judge |
| TERI L. HOPSON, | * | (DUI Second Offense) |
| Appellant. | * | |

For Appellant:

James T. Bowman
Attorney at Law
128 East Market Street
Johnson City, TN  37604

For Appellee:

Charles W. Burson
Attorney General & Reporter

Glenn Erikson
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Joe Crumley
Assistant District Attorney General
P.O. Box 38
Jonesborough, TN  37659

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Teri L. Hopson,[1] was convicted after a bench trial of DUI second offense. The trial court sentenced her to eleven months, twenty-nine days; the defendant is to serve forty-five days in jail at 100 percent with the possibility for work release. Her driver's license was revoked for two years. Proof on a defense motion to suppress evidence was presented during the course of the bench trial; a ruling that the arrest was lawful was made at the conclusion of the trial.

The sole issue on appeal is whether the defendant was lawfully arrested for a misdemeanor offense, where the arresting officer did not witness the commission of the offense. Because we believe the arrest was proper, the judgment of the trial court is affirmed.

On September 1, 1994, Officer Larry Robbins of the Johnson City Police Department was working off duty as a security guard at a Krystal Restaurant when he observed the defendant drive her vehicle into the parking lot. The officer described the defendant's driving as follows:

> Miss Hopson was turning off of Market Street onto ...
> Franklin. She was in the left hand lane, there's two turn
> lanes. Miss Hopson's vehicle cut across from the left
> hand lane into the right hand lane in front of another
> vehicle and that's the one that blew the horn at her. And
> then she turned into the [K]rystal's parking lot. As she
> turned in she [ran] over the curb ....

Officer Robbins notified the dispatcher to direct an on-duty officer to investigate a possible drunk driver. Meanwhile, the defendant had made a call on a pay telephone and began to walk across the parking lot. Officer Robbins, who was

---

[1]While some pleadings refer to the defendant as "Terry L. Hopson," it is the policy of this court to refer to the defendant as her name appears on the indictment.

in uniform, then asked her to wait for the on-duty officer.  The officer acknowledged that the defendant, due to her impairment, was not free to leave in her vehicle.  Officer Robbins, who had been trained in DUI enforcement and the use of field sobriety tests, waited at the scene until Officer Lori Cox was able to administer the tests.  He witnessed the defendant's poor performance.

On cross-examination, Officer Robbins testified that he had not arrested the defendant and had not physically restrained her in any fashion.  He stated that the defendant, after concluding her telephone call, walked towards the restaurant rather than towards her car; thus, he concluded that the defendant did not intend to drive away at that moment.  On redirect, however, Officer Robbins reiterated that he would not have allowed the defendant to leave in her condition.

Officer Lori Cox testified that upon her arrival at the scene, Officer Robbins informed her that he had seen the defendant drive in a reckless manner.  Officer Cox, who acknowledged that she never saw the defendant drive her car, smelled alcohol on her breath.  The defendant admitted that she had been drinking and informed Officer Cox that she had stopped to use a phone.  When the defendant performed poorly on the field tests, Officer Cox took her to the jail.  While there, the defendant failed additional field tests.

The trial court ruled that the arrest had been lawful and found the defendant guilty of DUI second offense:

> I don't think that Officer Cox saw enough to arrest the
> defendant, because she was not in control of the
> automobile, and while she was on a public parking place
> that met the criteria of one of the elements, and that in
> my opinion she was under the influence of an intoxicant
> because of her failure to pass the sobriety tests.  But she
> did not commit driving under the influence of an
> intoxicant in the presence of Miss Cox.  Now, in my

3

opinion she did do actions before Officer Robbins, and
then he detained her, and then Officer Cox investigated
and determined as to exact what--what she should be
charged with. And here we have an officer in uniform,
whether he's a private citizen or an officer that's detained
her and turned her over to another officer is almost
immaterial. I don't think there's much difference in a
private citizen and an officer that's off duty except in the
eyes of the arrestee. All right. I guess I have made my
decision. I'm of the opinion that Officer Robbins
detained, which in my opinion was a type of arrest. ...
Officer Cox just transported her to the jail. But it was
Officer Robbins['] case that he saw it and detained her.
And I'm of the opinion that that's enough.

The defendant contends that her arrest violated Tenn. Code Ann. §

40-7-103(a)(1), which provides that "[a]n officer may, without a warrant, arrest a

person [f]or a public offense committed ... in his presence." The defendant argues

that because she did not commit the offense in the presence of Officer Cox, the

officer had no authority to arrest her and did not have a reasonable factual basis for

detaining her. We disagree.

In some older cases, our courts have strictly and literally applied the

statutory limitation on warrantless arrests. In St. John v. State, 491 S.W.2d 629

(Tenn. Crim. App. 1972), for example, an off-duty police officer in Hernando,

Mississippi, observed a vehicle driving in a reckless fashion towards Memphis,

Tennessee. Id. at 630. The Mississippi officer notified Memphis authorities, who

subsequently arrested the defendant. Id. The arresting officer testified "that he did

not observe any unlawful act in his presence [and] ... [t]hat the basis for the arrest

was the information he had received from the Mississippi officer." Id. at 631. Our

court found that the arrest was illegal. Id. See also Williams v. State, 506 S.W.2d

193 (Tenn. Crim. App. 1973).

In more recent cases, however, courts have held that in certain limited

4

circumstances an officer may make an arrest for a misdemeanor even though it is not committed in his presence. See State v. Bryant, 678 S.W.2d 480 (Tenn. Crim. App. 1984). In Bryant, a police officer observed a car traveling 110 miles per hour. Id. at 482. After unsuccessfully attempting to stop the car, the officer asked for assistance. Id. Moments later, a second officer, who had heard the dispatch, detained a car that matched the description given. The first officer then arrived at the scene and made the arrest. Id. The second officer "observed no unlawful action ... [and] the stop was based entirely on [the first officer's] transmission." Id. Our court ruled as follows:

> We note initially that this limitation on warrantless arrests for misdemeanors is not constitutionally required. Further, in states that retain the rule, it is frequently held that in light of the increased speed with which offenders may flee from a witnessing officer and modern communications techniques available to the police, an offense may be said to have been committed in the presence of the arresting officer if he is in communication with and is assisting the witnessing officer.

Id. at 483. In determining that the initial detention was lawful, this court ruled that the prohibition against arrests for misdemeanors not committed in the officer's presence could not be read to deprive the witnessing officer of the "assistance of a fellow officer when that assistance is requested in a reliable manner." Id.

In State v. Maxie Lewis Hunter, No. 89-101-III (Tenn. Crim. App., at Nashville, Oct. 13, 1989), an officer observed an intoxicated driver stop at a gas station. Id., slip op. at 2. Because the witnessing officer did not have "jurisdictional authority," he called a second officer who arrived about five minutes later. Id., slip op. at 2-3. The arrest was made in the presence of the witnessing officer. This court, noting that the purpose of the statute is to "prevent groundless misdemeanor arrests of citizens based on hearsay or speculation," upheld the arrest. Id., slip op. at 4. "[A]ny harm that might occur from a warrantless [arrest] is cured when a police

5

officer actually witnesses the offense and then communicates what he has observed, on the scene and after a very short span of time, to an officer authorized to make the arrest in the particular geographical jurisdiction." Id., slip op. at 4-5. We cannot distinguish the ruling in Hunter from the facts in this case.

The defendant also contends that Officer Cox did not have a sufficient factual basis for detaining her. She bases this argument on our ruling in State v. James Chester Cobb, Sr., No. 01C01-9011-CC-00308 (Tenn. Crim. App., at Nashville, May 7, 1991). In Cobb, this court held the police officer did not have a sufficient factual basis for conducting an investigatory stop where the only information the officer had was based on a police dispatch which was based on an anonymous informant. Id., slip op. at 1-2. Because there was no "indication ... whether the informant was 'credible' or whether the information given was reliable," our court found the stop unlawful. Id. Here, however, the informant was a police officer whose identity and credibility were known by the arresting officer. See State v. Seaton, 914 S.W.2d 129, 131 (Tenn. Crim. App. 1995). In our view, the arrest was based upon probable cause from a reliable source. While at the scene, the arresting officer was able to verify much of the information provided.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
William M. Barker, Judge

6

_____
Curwood Witt, Judge